Samuel Zurik III (admitted *pro hac vice*)
Robert P. Lombardi (admitted *pro hac vice*)
Bryan E. Bowdler (admitted *pro hac vice*)
THE KULLMAN FIRM, P.L.C.
1100 Poydras Street, Suite 1600
New Orleans, LA 70163
T: (504) 524-4162 | F: (504) 596-4189
sz@kullmanlaw.com | rpl@kullmanlaw.com | beb@kullmanlaw.com

Martin Regimbal (admitted *pro hac vice*)
Jennifer D. Sims (admitted *pro hac vice*)
THE KULLMAN FIRM, P.L.C.
119 3rd Street South, Suite 2
Columbus, MS 39701
T: (662) 244-8824 | F: (662) 244-8837
mjr@kullmanlaw.com | jds@kullmanlaw.com

Aaron D. Sperbeck (AK Bar No. 0511112)
BIRCH HORTON BITTNER & CHEROT
1127 W. 7th Avenue
Anchorage, AK 99501
T: (907) 276-1550 | F: (907) 276-3680
asperbeck@bhb.com

*Attorneys for Defendant Schlumberger Technology Corporation*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA

| | | |
|---|---|---|
| **TRAVIS BUNTIN** | § | **Case No. 3:16-cv-00073-TMB** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | |
| | § | |
| **SCHLUMBERGER TECHNOLOGY** | § | |
| **CORPORATION** | § | |
| | § | |
| **Defendant.** | § | |

### MOTION TO RECONSIDER DENIAL OF SUMMARY JUDGMENT

Now comes Defendant, Schlumberger Technology Corporation ("STC"), and moves this Court to reconsider its denial of its Motion for Summary Judgment ("Motion").

On August 6, 2018, the Court denied STC's Motion, wherein it argued that Buntin was properly classified as exempt.[1] Thereafter, this Court certified to the Alaska Supreme Court the questions of what standard of proof applies to exemptions under the AWHA and whether, following the United States Supreme Court's holding in *Encino Motorcars v. Navaro*,[2] AWHA exemptions should be given a narrow or fair interpretation.[3] After the Alaska Supreme Court answered those questions,[4] Buntin filed a Motion for Rehearing with the Alaska Supreme Court. On June 11, 2021, the Alaska Supreme Court withdrew its prior Opinion, issued a revised Opinion, and upheld its prior findings as to the two certified questions.[5] STC has filed its request within fourteen days of that change in law becoming final.

In its Opinions, the Alaska Supreme Court concluded that Alaska courts should apply the same interpretive principles to the AWHA white collar exemptions as federal courts apply to the FLSA white collar exemptions.[6] This sea change regarding analysis of FLSA exemptions now applies to AWHA exemptions and warrants a reconsideration of STC's Motion. Indeed, in its 2018 ruling on STC's Motion, the Court cited to and relied

---

[1] Doc. 102.
[2] 138 S. Ct. 1134 (2018).
[3] Docs. 111 and 119.
[4] Exhibit A, Opinion.
[5] Exhibit B, Revised Opinion.
[6] "*Encino*'s interpretive principle that courts must give federal [FLSA] exemptions a fair interpretation applies when the AWHA text explicitly requires alignment with FLSA interpretations." (Exhibit A, p. 3.) The Court also determined that an employer only needed to prove that an AWHA exemption applies by a preponderance of the evidence.

upon multiple cases that utilized the pre-*Encino* narrow-interpretation principle.[7]

It is unequivocal that *Encino* changed the law. In reviewing post-*Encino* case law, certain common threads emerge that distinguish a narrow construction from a fair reading. Chief among them is that a narrow reading focuses on potential issues and seeks to construe them in a way that denies the exemption.[8] Narrow construction applies court-made rules to supplement and further limit the regulations.[9] A fair reading, on the other hand, relies on the ordinary meaning of the regulations.

Under the fair reading standard, exemptions are to be evenly balanced with the overtime requirements. Courts should analyze applicable exemptions by applying relevant law to the salient facts in an impartial manner without first tipping the scales in favor of the employee.[10] "*Encino* . . . stand[s] for the proposition that an interpreting court should not simply construe exemptions narrowly, but should consult dictionaries contemporary to the statute, as well as general usage . . . to determine the ordinary meaning of the terms employed."[11] "The implication is that the standard is now more employer-friendly . . . ."[12]

---

[7] *See, e.g., Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1112 (9th Cir. 2001); *Galvan v. FTS Int'l Servs., LLC*, 16-147, 2017 WL 3012651 at *1 (W.D. Tex. June 7, 2017); *Resurrection Bay Auto Parts, Inc. v. Alder*, 338 P.3d 305, 310-11 (Alaska 2014).

[8] *See Ford v. Houston Indep. Sch. Dist.*, 97 F. Supp. 3d 866, 873 (S.D. Tex. 2015) (refusing to utilize a strict construction, the court granted summary judgment in favor of a defendant on the issue of overtime and distinguished the outcome in a similar case where the court applied a narrow construction).

[9] *See e.g., Dalheim v. KDFW-TV*, 918 F.2d 1220 (5th Cir. 1990) (adding a requirement to the administrative exemption that it applies when the employee is involved with administering the business affairs of the enterprise and not with producing the commodity of the business); *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2nd Cir. 2009) (failing to recognize that the administrative exemption applies to work directly related to the general business operations of an employer's *customers* and instead solely focusing on the general business operations of the employer).

[10] *See, e.g., Martinez v. Superior Healthplan, Inc.*, 371 F. Supp. 3d 370 (W.D. Tex. 2019).

[11] *Quartararo v. J. Kings Food Serv. Pros., Inc.*, 17-7390, 2021 WL 1209716 at *8 (E.D.N.Y. Mar. 31, 2021); *see also Munoz-Gonzales v. D.L.C. Limousine Serv., Inc.*, 904 F.3d 208, 213 (2nd Cir. 2018).

[12] *Quartararo*, 2021 WL 1209716 at *8. *Cf. Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 138 n. 77 (2nd Cir. 2020) (recognizing that narrow construction requires a "mechanical application" of exemptions).

In its ruling on STC's Motion, this Court narrowly construed whether STC was able to establish that Buntin managed a customarily recognized subdivision of STC, focusing on the permanency of Buntin's crews.[13] But nothing in the governing regulation requires "permanency" of a crew.[14] In fact, the regulation states that the continuity of the same subordinate personnel is not essential to the existence of a recognized unit with a continuing function.[15] Instead, the relevant inquiry is whether the employee is over a *recognized* unit or subdivision, and Buntin's crew undoubtedly meets the "unit or subdivision" requirement.[16]

In ruling on STC's Motion, the Court also narrowly construed whether Buntin's primary duty was management, focusing primarily on Buntin's operation of the slickline unit.[17] In doing so, the Court failed to recognize that, if Buntin so chose, he could direct the Helpers assigned to his crew, whom he had trained on the machinery, to operate the slickline equipment under his direction.[18] Buntin, on the other hand, was the only one who

---

[13] Doc. 102, pp. 12-13.

[14] Even so, when it comes to permanency, which may be part of considering all the evidence, the evidence did not show anything aside from normal turnover. "During a hitch, Buntin and his Helpers were not going to work on different crews at different times; they were assigned to a specific crew and worked on that crew until the end of their [two-week] hitch," and they did not change crews between hitches unless they were transferred by a Cell Leader. (See Doc. 61, ¶ 21.)

[15] 29 C.F.R. § 541.103(d).

[16] STC produced evidence that the "crews" were even included in the company's organizational charts as separate units (Doc. 61, ¶ 20) and case law shows that crews like Buntin's constitute customarily recognized units or subdivisions. *See Carranza v. Red River Oilfield Svcs., LLC*, 15-3631, 2017 WL 387196 (S.D. Tex. Jan. 25, 2017); *Ramos v. Baldor Specialty Foods, Inc.*, 587 F.3d 554, 560-601 (2nd Cir. July 12, 2012); *Burson v. Viking Forge Corp.*, 661 F. Supp. 2d 794 (N.D. Ohio Aug. 27, 2009).

[17] Doc. 102, pp. 10-11.

[18] Buntin admits that the Helpers (also called "Hands") assigned to his crew ran the slickline unit. (Doc. 59-3, pp. 17, 87, 88.) Further, Buntin ran the slickline unit when he was a Helper, and the Specialist assigned to his crew supervised and trained him on the proper method. (*Id*. at 21.) And after Buntin was promoted to a Specialist, his operation of the machinery was so he could physically show the Helpers how to perform that task. (Doc. 59-3, pp. 59, 91.)

performed the duties specifically assigned to the Specialist.[19] Further, when Buntin chose to run the slickline unit, he was at the same time training and supervising the Helpers on his crew.[20]

In analyzing the primary duty element of the executive exemption, the Court also narrowly analyzed "the extent to which Plaintiff was able to exercise discretion in managing his crew and his level of freedom from supervision."[21] In doing so, the Court only focused on a few disputed facts and ignored a number of undisputed, material facts that establish the exemption. It is undisputed that Buntin's supervisor would present to the well site "very sporadically" and only "[o]nce in a great while."[22] Further, Buntin regularly performed many tasks that qualify him for the executive exemption.[23] Only a very narrow reading requiring total freedom from supervision could support a finding of a fact issue, but such a reading would be in direct conflict with the regulation itself[24] and *Encino*.

The Court also narrowly construed the administrative exemption by finding that there were "contrasting accounts of Plaintiff's day-to-day work," which included Buntin's contention that he primarily performed manual labor by operating the slickline unit.[25] In this manner, the Court failed to give proper weight to undisputed facts showing that one of Buntin's key responsibilities as a Slickline Specialist was his performance of

---

[19] *See* Doc. 59-3, pp. 132-33, 158-60, 170, 180-81, 188.
[20] Doc. 59-3, pp. 17, 87, 88, 132, 133.
[21] Doc. 102, p. 11.
[22] Doc. 59-3, p. 126.
[23] Doc. 59-3, pp. 132-33, 150, 153, 156, 158-60, 170, 180-81, 185-86, 188, 201-03,
[24] *See* 29 C.F.R. § 541.105.
[25] Doc. 102, p. 15.

BUNTIN VS. SCHLUMBERGER  CASE NO. 3:16-CV-00073-TMB
MOTION TO RECONSIDER DENIAL OF SUMMARY JUDGMENT  PAGE 5 OF 7

Case 3:16-cv-00073-TMB   Document 139   Filed 06/17/21   Page 5 of 7

administrative work directly related to the business operations of STC's client.[26] In this capacity, Buntin acted as an adviser to STC's clients, such that the administrative exemption applies to him.[27]

Any physical work performed by Buntin was merely ancillary to his overall responsibility for the entire operation,[28] as Buntin was responsible for the Slickline operation from the time of arrival until testing was complete, including all the time actually spent on the well site.[29] Even with the manual work Buntin claims to have performed, such work made up just a small fraction of the overall job and was not the primary purpose or duty of his position.[30] Any manual labor was *de minimis* and does not result in Buntin's "primary duty" being manual labor.

In its Opinion, the Court did not address the undisputed facts regarding the combination and highly compensated employee exemptions.[31] As set forth above, the Court narrowly analyzed certain facts relevant to these two exemptions and failed to give a fair reading to *all* of the pertinent facts.

WHEREFORE, Schlumberger Technology Corporation prays that its Motion to Reconsider Denial of Summary Judgment be GRANTED.

Respectfully submitted this 17th day of June, 2021.

---

[26] Doc. 59-3, pp. 53-54, 73-75, 131, 165-66.
[27] See 29 C.F.R. § 541.201(c).
[28] As previously noted, any need for Slickline Specialists to perform manual work was significantly decreased by the addition of a second Helper to the crew.
[29] Doc. 59-3, pp. 65, 69, 156-57, 165-66.
[30] Doc. 61, ¶ 14.
[31] Doc. 102, pp. 16-17. In its Motion (Doc. 59), STC briefed each of the elements of these exemptions. However, in its Opinion, the Court did not take issue with the remaining elements. STC reiterates and incorporates the arguments raised in its Motion as if such are set forth herein *in extenso*.

/s/ Jennifer D. Sims
Samuel Zurik, III (admitted *pro hac vice*)
Robert P. Lombardi (admitted *pro hac vice*)
Bryan Edward Bowdler (admitted *pro hac vice*)
THE KULLMAN FIRM, P.L.C.
1100 Poydras Street, Suite 1600
New Orleans, LA 70163
T: (504) 524-4162 | F: (504) 596-4114
sz@kullmanlaw.com | rpl@kullmanlaw.com |
beb@kullmanlaw.com

-and-

Martin J. Regimbal (admitted *pro hac vice*)
Jennifer D. Sims (admitted *pro hac vice*)
THE KULLMAN FIRM, P.L.C.
119 3rd Street South, Suite 2
Columbus, MS 39701
T: (662) 244-8824 | F: (662) 244-8837
mjr@kullmanlaw.com | jds@kullmanlaw.com
-and-

Aaron D. Sperbeck (AK Bar No. 0511112)
BIRCH HORTON BITTNER & CHEROT
510 L Street, Suite 700
Anchorage, AK 99501
T: (907) 276-1550 | F: (907) 276-3680
asperbeck@bhb.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of June, 2021, I caused the foregoing to be filed with the Court using the CM/ECF system which provided electronic service on all counsel of record.

/s/ Jennifer D. Sims
JENNIFER D. SIMS